MUNICIPIO DE PONCE, DEMANDANTE Y APELANTE, *v.* SUCESIÓN GELY, DEMANDADA Y APELADA.

APELACIÓN procedente de la Corte de Distrito de Ponce en pleito sobre demolición de propiedad.

No. 1510.—Resuelto en abril 17, 1917.

DEMOLICIÓN DE PROPIEDAD—INFRACCIÓN DE ORDENANZAS MUNICIPALES—FALTA DE HECHOS SUFICIENTES.—Cuando se presenta una demanda para que se ordene la demolición de una obra realizada en contravención de cierta ordenanza municipal que no permite reparación alguna en los edificios existentes en determinado sitio de la ciudad sin antes poner sus fachadas en relación con los últimos construídos y el ornato exigido por la importancia de dicho sitio, no basta alegar que las reparaciones se hicieron ''en violación de las ordenanzas municipales y sin que estén las mismas en armonía con el ornato de la ciudad,'' sino que es necesario especificar por qué las dichas reparaciones no guardan relación con los otros edificios y no están en armonía con el ornato exigido.

LEYES—INCONSTITUCIONALIDAD DE LEYES.—Sólo cuando la necesidad y la justicia lo requieran de consuno, deben los tribunales resolver que una ley·es inconstitucional.

ORDENANZAS MUNICIPALES—DESARROLLO Y EMBELLECIMIENTO DE MODERNAS CIUDADES.—No puede negarse que el desarrollo y embellecimiento de las modernas ciudades exigen que los municipios tengan grandes facultades para adoptar y hacer cumplir medidas tendentes a ese fin, no importando lo radicales que a primera vista parezcan, siempre, desde luego, que no opriman de modo injustificado a los ciudadanos, ni los despojen de su propiedad sin el debido proceso de ley.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. N. R. Canales* y *Alfonso Lastra Charriez.*

Abogado de la apelada: *Sr. R. Martínez Nadal.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

El Municipio de Ponce, representado por su alcalde, de-

mandó a la sucesión de José Gely, solicitando la adopción de ciertas medidas referentes a una casa reparada sin permiso del demandante.  La demanda se divide en dos partes, una titulada "Cuestión de seguridad pública" y otra "Cuestión de ornato."

En la "Cuestión de seguridad pública" se alega, en resumen, lo que sigue: Que la demandada es dueña de una casa situada en Ponce en la esquina que forman la plaza de "Degetau" y la calle del "Amor."  La casa es de dos plantas: los bajos de mampostería y los altos de madera.  Que el Alcalde de Ponce ordenó al ingeniero municipal que reconociera dicha casa y reconocida en efecto resultó que tenía podrida gran parte del balcón y constituía una amenaza para las personas que traficaban por aquel sitio.  Que el demandante entonces requirió al demandado para que procediera a destruir todo aquello que en la casa mencionada estuviese en condiciones de amenaza a la seguridad pública, inclusos los balcones de la misma, indicándole, además, que para verificar tal destrucción tenía que proveerse del permiso exigido por las ordenanzas municipales.  En la demanda se transcriben varias secciones de dichas ordenanzas: La 24, que se refiere a los edificios que amenacen ruina y que dispone entre otras cosas que "comprobada la denuncia por los informes facultativos que se crean necesarios la administración ordenará a los dueños de las fincas ruinosas que las derriben o construyan de nuevo, dentro del término prudencial que según los casos se fije por el concejo municipal, quien, caso de no verificarse así por aquéllos, no obstante las denuncias judiciales que por órdenes desatendidas se hubieran presentado, dispondrá el derribo por cuenta del municipio con cargo al valor del solar vendiéndose en pública subasta si fuere necesario y sin perjuicio de exigir la responsabilidad criminal que el propietario hubiere contraído."  La 36 que prescribe que "las solicitudes para hacer cambios (se especifican) se dirigirán a la alcaldía, la que les dará el curso correspondiente, exigiéndose la presentación de plano si se considerase indispensa-

ble a los fines de la concesión de la licencia y estimándose, desde luego, como necesario el acompañarlos siempre que se haya de variar en algo importante la parte exterior de un edificio en las zonas número 1 y 2; *Disponiéndose* que en ningún caso se permitirá reparación alguna en los edificios de madera que existan en las plazas 'Delicias' y 'Federico Degetau,' y en los de mampostería y madera, tampoco podrá hacerse reparaciones de ninguna clase sin antes poner su fachada en relación con los últimos edificios construídos y el ornato exigido por la importancia de dichas plazas.'' La 7 que determina que ''la ejecución de toda clase de obra de construcción, reparación de edificios, casas y vías públicas, así como toda variación o traslación que pueda afectar al ornato público en las zonas números 1 y 2 necesita ser autorizado por la administración municipal, dentro de la legalidad vigente en la materia. * * *'' La 8 que exige que ''en la zona número 1, en la subdivisión 'Zona de Piedra,' solamente podrá construirse en mampostería o hierro, siendo requisito indispensable colocar la fachada del edificio precisamente sobre la alineación de la calle, y no se permitirá ninguna construcción nueva de madera, ni quitar o poner tabiques o divisiones que cambien la distribución de una casa de madera, exceptuando la parte que, en los de mampostería ya construídos, sea de madera; * * *'' y la 25 que dispone que ''en todo solar en esquina, en toda nueva construcción o edificación en un solar que estuviese situado en esquina, en todo edificio que ocupe una esquina en el que se hiciese modificación o alguna reparación, el municipio podrá ordenar el corte o chanflán, en una forma de triángulo en el cual cada uno de los lados inmediatos a la calle medirá tres metros como mínimum, partiendo de la esquina del solar, sin contar el ancho que corresponda a la acera, * * *.'' Que al dicho requerimiento del demandante, contestó la demandada manifestando que estaba dispuesta a sustituir los balcones de la casa por otros de madera y que esperaba que se le concediera el oportuno permiso para hacer la sustitución. Que el demandante contestó a la deman-

dada que para obtener tal permiso de acuerdo con las seccio-
nes 34 y 35 de las ordenanzas, era necesario que expresara en
la solicitud la extensión y objeto del trabajo, acompañando
el plano del mismo.  Al propio tiempo el demandante informó
a la demandada que le concedía treinta días de plazo para de-
rribar los balcones.  Que la demandada comunicó entonces al
demandante que retiraba su solicitud de sustitución de los
balcones porque había resuelto repararlos meramente a cuyo
efecto pedía que se le autorizara para levantar el andamiaje
necesario.  Que el demandante se negó a conceder tal permiso.
Que la demandada insistió en que se le otorgara permiso no
ya para el andamiaje, sino para hacer las reparaciones que
los balcones requerían, sin que para ello llenara los requisitos
exigidos por las ordenanzas.  Que con motivo de haberse des-
prendido dos balaustres de los balcones, el demandante comu-
nicó a la demandada la necesidad de proceder al derribo de
los balcones.  Que así las cosas, el demandante, el 3 de diciem-
bre de 1915, paso una ordenanza por virtud de la cual, y des-
pués de relacionarse todos los antecedentes de que se deja
hecho mérito y de especificarse por qué se llegaba a la conclu-
sión de que la casa de que se trata se encontraba en estado
ruinoso, se declaró que dicha casa constituía un estorbo pú-
blico (*common nuisance*), y se ordenó que una vez cumplido
el término de treinta días que le había sido concedido por el
alcalde al representante de la sucesión demandada, el alcalde
procedería a hacer cumplir las disposiciones que entrañaba la
sección 34ª. de la ordenanza, todo por cuenta, cargo y riesgo
de los dueños propietarios de la casa en cuestión.

En la ''Cuestión de ornato,'' se sostiene textualmente lo
que sigue: ''*Décimo quinto:* Que posteriormente, o sea el día
15 de diciembre de 1915 el Señor Gispert, actuando como apo-
derado y representante de la sucesión demandada, maliciosa
y voluntariamente, burlando las ordenanzas municipales vi-
gentes, sin pedir ni obtener permiso, procedió a eso de las
cinco de la tarde de dicho día 15 de diciembre a destruir los
balcones del referido edificio, utilizando en dicho trabajo diez

o más carpinteros, y actuando como director de la obra un señor llamado Jacobo Tur; que luego de destruídos los balcones de dicho edificio allí entonces, dicho Señor Gispert, utilizando los propios carpinteros y al director de la obra Señor Tur, prosiguió y procedió a hacer reparaciones en dicho edificio en la parte exterior, habiendo trabajado durante toda la noche en dicha obra y reconstruyendo en parte el balcón, reparado éste en otra, puesto vigas nuevas y haciendo en fin, una reparación de importancia, sin que, como ya se ha dicho antes, tuviera permiso del municipio, y habiendo hecho dichas reparaciones en violación de las ordenanzas municipales y sin que estén las mismas en armonía con el ornato de la ciudad.''

La demanda termina suplicando que se condene a la sucesión demandada: *Primero:* A que en bien del ornato público dicha sucesión destruya toda la parte del edificio que ha sido reparado en violación de aquél y de las ordenanzas municipales vigentes; *Segundo:* A que si dicha sucesión demandada, luego de destruído lo que ha recompuesto ilegalmente, deseara reparar esto de nuevo que se le prohiba dicha reparación sin antes cumplir con las ordenanzas municipales vigentes, sobre ornato; *Tercero:* A que dicha sucesión demandada, no pueda reparar parte ni todo el edificio en cuestión, sin antes llenar los requisitos de las referidas ordenanzas municipales; *Cuarto:* A que se obligue a la sucesión demandada a destruir todo aquello que en el edificio ameritado se hallare podrido e inútil que signifique una amenaza para la seguridad pública y que en caso de que la referida sucesión querellada no hiciere esto último o lo anterior se ordene al márshal de este tribunal que lo efectúe a costa de la referida sucesión, pidiendo asimismo que ésta sea condenada a pagar las costas, y gastos de este procedimiento y honorarios de abogado.''

La parte demandada presentó un escrito de excepciones previas, alegando que ni el Municipio de Ponce, ni su alcalde, tenían capacidad legal para demandar en este caso, y que la demanda no aducía hechos suficientes para determinar una causa de acción. Oídas las partes, la corte de distrito, por

sentencia de 15 de abril de 1916, declaró con lugar ambas excepciones y desestimó la demanda, sin especial condenación de costas.  Y contra esa sentencia interpuso el demandante el presente recurso de apelación.

En cuanto a la "cuestión de seguridad pública," la Corte de Distrito de Ponce en una razonada opinión concluyó que la única entidad que en la actualidad tenía personalidad bastante en esta isla para pedir en las cortes de justicia la remoción de un "perjuicio común," era El Pueblo de Puerto Rico, por medio de sus fiscales, y que siendo ello así, ni el Municipio de Ponce, ni su alcalde, tenían la capacidad necesaria para ejercitar la acción que habían establecido.

No es preciso que resolvamos esa cuestión en este caso, pues, como también sostiene la corte sentenciadora, las alegaciones de la parte demandante contenidas en su "cuestión de ornato," demuestran que cuando la demanda se interpuso la parte ruinosa del edificio había sido reparada.

No estamos, pues, frente al caso de un edificio ruinoso. La verdadera cuestión a resolver es la de si reparado un edificio en la ciudad de Ponce en contravención a las ordenanzas municipales, el municipio tiene derecho a obtener en una corte de justicia una sentencia que ordene la demolición de la obra de tal modo realizada.

En el caso del *Municipio de Ponce* v. *Solís,* decidido por esta Corte el 12 de abril actual, (pág. 125) interpretando cierta sección de la misma ordenanza invocada por el Municipio de Ponce en este caso, se estableció la siguiente doctrina:

"Cuando una ordenanza municipal dispone que las obras que se lleven a cabo sin licencia, con abuso de ella o con infracción de la misma, será demolida a costa del propietario si fuere de las que no hubiere podido autorizarse su ejecución o no debiera permitirse su subsistencia o reforma, no basta con probar que se ha hecho una obra sin cumplir los requisitos de dicha ordenanza, pues debe probarse además que no hubiera podido autorizarse la construcción o que es de tal naturaleza que no debe permitirse su subsistencia."

Examinemos las alegaciones de la demanda a la luz de la anterior doctrina.

El *disponiéndose* de la sección 36 de las ordenanzas arriba transcrito, expresamente dispone ''que en ningún caso se permitirá reparación alguna en los edificios de madera que existan en las plazas 'Delicias' y 'Federico Degetau,' y en los de mampostería y madera, tampoco podrán hacerse reparaciones de ninguna clase sin antes poner su fachada en relación con los últimos edificios construídos y el ornato exigido por la importancia de dichas plazas.''

La casa en cuestión en este pleito se levanta con su frente a la plaza ''Degetau'' y es de mampostería y madera. En tal virtud, de acuerdo con la ordenanza, no podía hacerse en ella reparación de ninguna clase sin antes poner su fachada en relación con los últimos edificios construídos y el ornato exigido por la importancia de dicha plaza.

No obstante lo extenso de la demanda, (ocupa trece páginas de la transcripción) no se especifica en ella si la fachada de la casa de la demandada fué puesta o no en relación con los últimos edificios construídos, y por qué la reparación llevada a efecto no estaba en armonía con el ornato exigido por la importancia de la plaza ''Degetau.''

Las alegaciones del demandante relativas a la ''cuestión de ornato'' las dejamos copiadas a la letra y como puede verse sólo contienen la conclusión de que las reparaciones se hicieron ''en violación de las ordenanzas municipales y sin que estén las mismas en armonía con el ornato de la ciudad.'' Tal conclusión es insuficiente para que la corte esté justificada en decidir que se alegan hechos bastantes para determinar la necesidad de un decreto ordenando la demolición de la obra realizada.

La parte apelada en su alegato insiste en que este tribunal resuelva que la ordenanza del Municipio de Ponce es inconstitucional. Sólo cuando la necesidad y la justicia lo requieren de consuno, deben los tribunales declarar inconstitucional una ley. Además, y por lo que hace referencia a

la naturaleza de las ordenanzas que se discuten en este caso, diremos que no puede negarse que el desarrollo y embellecimiento de las modernas ciudades exigen que los municipios tengan grandes facultades para adoptar y hacer cumplir medidas tendentes a ese fin, no importando lo radicales que a primera vista parezcan, siempre, desde luego, que no opriman de modo injustificado a los ciudadanos ni los despojen de su propiedad sin el debido proceso de ley.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, Aldrey y Hutchison.